MERCEDES BUS LINE, INC., Petitioner, *v.* DISTRICT COURT OF SAN JUAN, HON. EMILIO S. BELAVAL, JUDGE, Respondent; CESÁREO RIVERA ET AL., Interveners.

No. 8. Argued November 9, 1949.—Decided December 14, 1949.

*Fernando B. Fornaris* and *Luis E. Gandía Argüelles* for petitioner. *Benjamín Ortiz* for interveners, complainants in the main action.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Pursuant to the provisions of § 1 of Act No. 43 of April 28, 1930 (Sess. Laws, p. 356), as amended by No. 84 of May 12, 1943 (Sess. Laws, p. 196)[1] Cesáreo Rivera, Gilberto Bonano Vélez, Justo Quiles Martínez and Anastacio Ortiz Arroyo filed in the Municipal Court of San Juan a complaint against the Mercedes Bus Line, Inc., wherein they allege having worked as chauffeurs of the latter's omnibuses, their

---

[1] Section 1 of Act No. 43 of 1930, as amended in 1943, provides:

"Every employee of an industry or other lucrative business whose services are contracted for without a definite term, who is discharged without just cause, shall be entitled to receive as indemnity from his employer, in addition to such salary as he may have earned, one month's salary; *Provided,* That the provisions of this Act shall not be applicable to commercial shop-clerks or factors, to whom the provisions of the Code of Commerce shall apply."

services having been engaged without a definite term on the basis of a salary of $4.50 daily; that on September 19, 1947 the respondent, without just cause and without previous notice, discharged them and that it has not paid them one month's salary as indemnity. They pray that the respondent be adjudged to pay to each of them the sum of $126 as indemnity for the wrongful discharge, plus costs and attorney's fees. After hearing the case, the Municipal Court rendered judgment for the respondent. The complainants having appealed, the district court rendered judgment ordering the respondent to pay to each one of the former the sum of $135 (sic), plus costs and $100 as attorney's fees. From the judgment so rendered the respondent has appealed to us by way of certiorari. Actually, the only question involved herein is whether or not complainants' discharge was for just cause.

■■ As we said in *P. R. Cap & Tires Sales* v. *District Court*, 68 P.R.R. 370, 374, ". . . it is incumbent on the courts, after taking into consideration the facts and special circumstances of each case, to determine whether the discharge of the workman was well founded or whether it was arbitrary or unjustifiable. The obligation to indemnify a workman who has been discharged, where the contract of employment was made without a definite term, is not an absolute one. That obligation arises where he is arbitrarily or unnecessarily discharged without any just cause, reason or ground justifying the employer in dispensing with the services of the workman." In view thereof it is necessary to examine the evidence adduced by the parties. Petitioners' evidence tended to show that on a certain night in September 1947 the defendant's manager assembled them in order to explain to them how the rules just approved by the defendant ought to be construed and applied by them, particularly as to how they should collect the fare from the passengers going from Eleanor Roosevelt to San Juan and returning from San Juan

to Eleanor Roosevelt;[2] that said rules were put into effect the next morning; that this brought confusion to them, to the extent that they often had to pay from their own pocket the money when their accounts were short; and that they always delivered to the defendant all the money they collected from the passengers.

Defendant's evidence was to the effect that upon learning of some irregularities on the part of its chauffeurs it proceeded to approve certain rules which should be kept by them; that on the night of September 8, 1947 its manager, Juan Torres Becerra, assembled the twelve chauffeurs who at that time worked for it and explained to them in detail the scope of the rules; that when all the chauffeurs said that they understood them properly, they were given copies of the rules and were required to sign a memorandum saying so; that subsequently almost every night said manager assembled the chauffeurs anew and cleared any doubts that they might have with respect to said rules; that in order to determine whether the chauffeurs acted pursuant to the rules, it designated what it called "phantom inspectors," who, unknown to the chauffeurs, were to board the vehicles they drove and notice whether they registered all the passengers who boarded the busses and paid; that on September 16, 1947 the inspectors, at 1:45 p.m., in Eleanor Roosevelt Ward, boarded the bus which Gilberto Bonano was driving toward San Juan and they noticed that 51 passengers got in and paid and that Bonano only registered 46; that on September 17 they took the bus driven by Anastacio Ortiz and saw that

---

[2] According to said rules, the passenger who boarded a bus on the way from Eleanor Roosevelt to Stop 26 would pay upon entering and the one who boarded the bus from Stop 26 up to San Juan would pay upon entering and would get a token. The passenger who had no token and got off before Stop 20 would not pay when getting off, but the one who did not have the token and got off after Stop 20 would pay another five cents upon getting off. The passenger who had a token and got off at any place between Stop 26 and San Juan would not pay upon getting off. The rules had similar provisions for the return route from San Juan to Eleanor Roosevelt.

27 passengers paid and that he only registered 23; that on September 18 they took the vehicle driven by Justo Quiles and saw that 20 passengers paid and that Quiles only marked 17; and that that same day they boarded the bus driven by Cesáreo Rivera and noticed that 19 passengers paid and that Rivera only registered 15.

In its judgment [3] the court *a quo* stated, among other things, the following:

". . . The phantom inspectors found out that the chauffeurs were incurring certain deficiencies, the most serious among all, that they did not take to the mechanical register 4 or 5 of the passengers they picked up within the assigned route.

" .    .    .    .    .    .    .    .    .    .

"A fair analysis of all the evidence submitted leads us to conclude that the errors committed by the discharged employees could be the result of the sudden change introduced by the employer in his entire collection system. There is no doubt that we cannot design for man a type of perfection similar to that designed for a machine. The apparition of the phantom inspectors who parade throughout defendant's evidence in the present case, has also left disturbed our judging spirit."

After said reasoning it adjudged the defendant to pay to the petitioners the amounts we have indicated above.

■■ It is a known principle in our law that the weighing of the evidence by a lower court will not be disturbed or modified by this Court in any way whatever, unless we are convinced that in such weighing said court committed manifest error or acted under the influence of passion, prejudice or partiality. *González* v. *Vélez*, 68 P.R.R. 835. The present case is not an exception, since we do not find manifest error therein or that the trial court acted under the influence of passion, prejudice, or partiality. However, as we said in *Rodríguez* v. *Pagán*, 67 P.R.R. 321, 324, "The weighing of the evidence is one thing and the legal effect thereof is another." If as indicated by the lower court "*a fair analysis*

---

[3] The lower court delivered no opinion.

*of all the evidence submitted leads us to conclude that the errors committed by the discharged employees could be the result of the sudden change introduced by the employer in his entire collection system"* (italics ours), to speak truly we can not see how it could grant the complaint and render judgment ordering the defendant to pay to the petitioners the amounts claimed. Neither can we agree with the lower court in that the fact that the petitioners did not register a certain number of passengers and their appropriation of said money is a mere error or deficiency. A great effort is therefore unnecessary in order to conclude that the defendant was justified in discharging the petitioners. Negligence, incompetency, disloyalty and disobedience to the employer's rules and orders are just causes to dismiss an employee. *Blanes* v. *District Court*, 69 P.R.R. 106; *Watkins* v. *Cochran*, 168 S. W. (2d) 351, 353; 35 Am. Jur., § 40, 473. The lack of confidence in the latter is likewise just cause. *P. R. Cap & Tires Sales Co.* v. *District Court, supra*. If the afore-mentioned are just causes for the discharge of an employee, the latter's dishonesty undoubtedly is just cause. Citations *supra.*

Although as we previously pointed out, we generally do not interfere with the weighing of the evidence by the lower court, we believe that it erred in giving legal effect to the evidence before it and that the just cause for the petitioners' discharge was amply demonstrated.

The judgment rendered by the lower court will be set aside and another rendered dismissing the complaint.